DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY.

NOVEMBER TERM, 1884.

PATRICK J. RYAN, ADMINISTRATOR OF ESTATE OF .WEMPLE, DECEASED, v. MARY VAN ARX.

<div style="float:right">46 531<br>63 448</div>

When a rule to limit creditors has been taken in the Orphans' Court by the personal representative, and upon a subsequent application such estate has been declared insolvent, a judgment obtained against the representative between the time of taking such rule and making such application will not be entitled to be paid in preference to other creditors. And if moneys have been received by virtue of such execution they will be ordered to be paid to the personal representative, to be applied ratably among the creditors.

On error to the Supreme Court. For opinion of Supreme Court see 16 *Vroom* 87, 89.

The statement of facts showed that the testator died January 28th, 1879, that his will was admitted to probate February 8th, 1879, and that an order to limit creditors was taken February 8th, 1879, under section 59, of the Orphans' Court

531

act. That the defendant in error commenced her suit after the time for creditors to prove their claims against the estate had expired, she having first duly proved her claim against the estate, and recovered judgment against the executors December 13th, 1879, for $1206.59. Execution was issued immediately, and a levy was made December 17th, 1879, upon all the personal estate of the decedent, long after the said personal estate had been inventoried by James W. Fisher, one of the executors, and long after the inventory had been filed in the surrogate's office of the county of Union.

A motion was made to set aside the execution, which motion was refused at the February Term, 1881, of the Supreme Court, for the reason that no proceedings had been taken to have the estate declared insolvent, and that such proceedings might never be taken. *Von Arx* v. *Wemple's Executors*, 14 *Vroom* 154.

The statement of facts further shows that since then, and on October 6th, 1882, proceedings were commenced by the plaintiff in error to have the estate declared insolvent under section 91 of the Orphans' Court act, and that on December 13th, 1882, the Orphans' Court of the county of Union declared the estate insolvent.

Motion was again made to set aside the said execution, on the ground that the estate was and had been declared insolvent, and that the defendant in error was not entitled to any preference over the other creditors of the estate; but that after the creditors preferred by the statute shall have been paid, the defendant in error can obtain only her just proportion of the balance of the assets of the estate. This motion was also refused.

The statement of facts further shows that since the last decision was rendered, the property levied upon under the execution has been sold by the sheriff, and realized more than sufficient to pay the execution in full. The amount received by the sheriff, less his execution fees, was $1439.52, and the proceeds of sale of the balance of the property, about $400,

was received by the plaintiff in error, the administrator continuing the sale after the sheriff had realized the amount due upon his execution; that these two sums of money represent all of the assets of the estate for the payment of the creditors, and that no debts of the estate have been paid up to the present time for the want of such assets; that notice was given to the sheriff by the plaintiff in error, to pay the sum realized upon the said execution into court, which was done.

The defendant in error then obtained a rule to show cause why the moneys realized under said execution should not be paid to her, in satisfaction of her judgment.

For the plaintiff, *Robert E. Chetwood.*

For the defendant, *Alward & Parrot.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The essential facts upon which the point to be decided hinges, are these: In the course of the settlement of this estate a rule to limit creditors was obtained; a creditor, the defendant in error, after they got a judgment against the original executor of this estate, who has been superseded by the plaintiff in error, and subsequently the plaintiff in error, made an application, by virtue of the ninety-first section of the Orphans' Court act, to have the estate declared insolvent. A decree of insolvency ensued, and the defendant in error having by virtue of his execution raised out of the property of the estate certain moneys, the question debated is, whether he is entitled to retain such moneys, or whether they should be paid over to the plaintiff in error for equal distribution among the creditors.

I have reached a conclusion in this respect which is adverse to that which has been expressed by the court below. Although there is undoubtedly ambiguity arising out of the peculiar context of that part of the statute in question, and although there is much force in the interpretation appealed from, nevertheless, as the question is of great practical import-

ance, and the view adopted is highly impolitic, and as the opposite one, as it appears to me, can be accepted in accordance with legal rules, it is this latter view that, in my judgment, should be enforced.

The construction which it seems to me should be put upon the several sections of the law in question can be explained in a few words. By the eighty-second section of this law it is declared that when an executor or administrator shall by his application, under oath, represent to the court that to the best of his knowledge and belief the estate represented by him is insolvent, the court is required to grant an order upon creditors to bring in their claims under oath ; and in subsequent sections provision is made, in the proper case, for the winding up of such insolvent estate. By section 88 it is declared that if any action shall be pending against such representative at the time of making such application, or shall thereafter be brought against him, such suit may proceed to final judgment; but that no execution shall issue, and that the judgment creditors shall come in with the other creditors and receive a ratable proportion.

The next pertinent section is the ninety-first, and this provides that if the rule to limit creditors, before referred to, has been taken, that at the time of taking such order, or at any time thereafter, the representative may present his application to have the estate declared insolvent in the manner before expressed. The defendant in error contends that inasmuch as he had obtained his judgment prior to the application treating this estate as insolvent, his judgment and execution are paramount to the rights acquired by the other creditors by virtue of this proceeding by the administrator. But this interpretation of the section above indicated is subverse of the general purpose of the act. That purpose is unmistakably clear, and it is in cases of insolvency to put all creditors, with a few specified exceptions, on the same footing. According to the purview of this act equality is equity, and to effect that equity is most manifestly the legislative endeavor. As the act originally stood the rule to limit creditors was a necessary

part of the procedure to obtain a decree of insolvency; but by the supplement of 1855, which contains the provision in a somewhat altered form, which now stands as the ninety-first section of the present law, a subsequent application, in cases of insolvents' estates, may be made, founded on a previous order to creditors to present theirclaims under oath within a limited time. But in both cases the order of limitation is the initial step in the procedure, and it seems to me that, in further-ance of the general legislative purpose, it must be considered that these subsequent applications for decrees of insolvency become part of and annex themselves to such initial orders. In this way the application for a decree of insolvency becomes contemporaneous with the order of limitation, and consequently a judgment subsequently entered against the representative will be subordinate to such procedure. It is by this construction, and by this construction alone, that full force can be given to the all-important provision con-tained in the ninety-second section of this law, which ex-pressly declares that in all cases where the estate is insol-vent the proceeds of the real and personal estate, after the payment of the preferred debts and expenses of administra-tion, shall be ratably distributed among the creditors. It will be observed, therefore, that it would be an interpolation into this section to construe it as requiring as well the pay-ment of judgments as preferred debts before the allotment to the creditors, for by its express terms nothing but the latter are to be deducted.

It seems to me that the view above expressed should pre-vail as plainly effective of the legislative purpose, notwith-standing such verbal and structural difficulties as are so forcibly presented in the opinion of the court below.

Let the judgment be reversed, and judgment entered in favor of the plaintiff in error.

*For affirmance*—DIXON.　1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, KNAPP, REED, SCUDDER, BROWN, COLE, PATERSON, WHITAKER. 9.